UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALMA PRODUCTS I, INC., and
ALMA PRODUCTS I, INC. MEDICAL INSURANCE
PLAN,

                    Plaintiffs,                            Case No. 14-cv-13066

v                                              Honorable Thomas L. Ludington

BLUE CROSS AND BLUE SHIELD OF
MICHIGAN,

                    Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This case is one of over thirty pending in this district in which Defendant Blue Cross & Blue Shield of Michigan (BCBSM) is being sued by various businesses seeking to recover funds BCBM allegedly billed and retained in violation of its third-party administrator (TPA) agreements and in breach of its fiduciary duty under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*  In this case, Plaintiffs Alma Products I and Alma Products I Medical Insurance Plan ("Alma Products") claim that BCBSM inflated the amounts it reported hospitals charged for claims.  BCBSM would then allegedly keep the difference between what it was actually paying to hospitals and the amounts it reported it was paying.  Similar cases have referred to this difference as "disputed fees."

This case was stayed while BCBSM appealed the judgment entered against it in another case, *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, because BCBSM predicted that the outcome of the appeal would determine the fate of the instant litigation.  751 F.3d 740

(6th Cir. 2014).   The Sixth Circuit affirmed the judgment against BCBSM, and this Court subsequently lifted the stay in the current proceedings.

BCBSAM then moved to dismiss this case in its entirety, asserting that the statute of limitations had already expired on all of Alma Products' claims.   Alma Products, in turn, filed a motion for partial summary judgment, relying on the Sixth Circuit's ruling in *Hi-Lex Controls*. Because ERISA's statute of limitations does not bar Alma Products' claims, BCBSM's motion to dismiss will be granted in part.   The motion will also be granted in part because ERISA preempts Alma Products' state-law claims.   Finally, Alma Products' motion for partial summary judgment on its ERISA claims will be granted.

## I

Alma Products is a "self-funded" customer of BCBSM, meaning that Alma Products pays the medical care costs of its employees from its own revenue (up to a stop-loss limit), instead of purchasing health insurance for them.   Alma Products signed a contract with BCBSM in 1989, renewed annually, for BCBSM to act as third-party administrator for health care claims.   The parties refer to their contract as the Administrative Services Contract (ASC).   Under the ASC, BCBSM receives, processes, and pays health care claims from Alma Products' employees; provides Alma Products with stop-loss insurance coverage; and allows Alma Products' employees access to BCBSM's provider networks and their discounted rates.   BCBSM submitted regular statements to Alma Products stating the amount paid for healthcare and charging various fees authorized by the ASC.   Alma Products remitted payment based on those statements.   Alma Products alleges that BCBSM substantially overstated the amounts owing by adding administrative charges that were never disclosed and that it never agreed to pay.

**A**

According to BCBSM, the "disputed fees" originated in the following manner.  Starting in 1994, BCBSM was authorized to retain a portion of the discounts it negotiated with large hospitals to pay for maintenance of BCBSM's networks and to cover regulatory expenses. BCBSM developed and implemented this pricing arrangement for its entire ASC line of businesses.

Through the ASC, BCBSM provided companies (including Alma Products) with a bundle of services.  The ASC informed the companies that their hospital claims cost would include these expenses.  Accordingly, the companies paid hospital claims and all other ASC costs from its general assets.

BCBSM is uniquely able to negotiate these significant discounts with healthcare providers.  Through these agreements with providers, BCBSM passes on substantial savings to its self-funded companies, although the ASCs do not entitle the companies to a particular discount.

The disputed fees are the difference between the cost of the claim and the amount BCBSM actually paid—which is generally the amount of the discount that BCBSM was able to negotiate.

**B**

According to Alma Products, those disputed fees were secretly added to the disclosed "Administrative Service Fee" that was specified in the Schedule A documents, which were executed annually.  Alma Products asserts that the disputed fees were not disclosed in any of the period statements, reporting forms, or settlement reports that BCBSM supplied, but instead were buried within the number reported as "Amounts Bill" by health care providers, rather than

- 3 -

itemized in areas reserved for reporting "costs" or "fees."  In essence, Alma Products claims that BCBSM unilaterally decided how much extra of the disputed fees it would keep, and then lied to Alma Products in report after report about how much it paid hospitals and how much it paid itself.

**C**.

The fees at issue in this case are identical to the fees at issue in *Hi-Lex*, and, of relevance to the instant motions, BCBSM argued during trial and on appeal that it had disclosed the disputed fees in 2007—the same claim it makes in the instant case.  In its briefs on appeal, BCBSM explains that in 2007, it began distributing pie-chart reports to their customers.  These "Value of Blue" pie charts provided information about how BCBSM spent the customers' fees.  In the 2007 Value of Blue pie charts, BCBSM identified a slice as "Access Fees" and provided the dollar amount of Access Fees a customer paid in the prior year.  These "Access Fees" are the disputed fees at issue in the instant litigation.

After distributing the Value of Blue pie chart, on August 21, 2007, a BCBSM account representative presented the annual settlement—which included to the Value of Blue pie chart—to Hi-Lex company representatives.  During the presentation, BCBSM explained each slice of the pie chart, including the one showing "Access Fees".  BCBSM then provided Value of Blue pie charts for each year thereafter.

**II**

BCBSM advances several grounds for dismissing Alma Products' complaint.  First, BCBSM contends that the claims are time-barred by the statute of limitations.  Second, BCBSM claims that Alma Products should be estopped from recovering the disputed fees.  Third, BCBSM claims that Alma Products' complaint fails to state a claim on which relief may be

granted with respect to the PGIP fees. And finally, BCBSM claims that Alma Products' state law claims are preempted by ERISA.

## A

BCBSM first contends that it disclosed the hidden fees and that Alma Products waited too long after it should have known of them to file its lawsuit. Therefore, BCBSM asserts that ERISA's six-year statute of limitations has already run, and all of Alma Products' claims are time-barred.

## i

BCBSM asserts that the statute of limitations commenced no later than June 20, 2007, the date of the "Value of Blue" Settlement Statement. Therefore, BCBSM continues, the ERISA's statute of limitations expired in 2013, and Alma Products 2014 Complaint is untimely. Ex. A.

Next, BCBSM claims that the Value of Blue pie chart provided as part of the 2006 annual settlement documents provided Alma Products with notice of the disputed fees. The pie chart, Def.'s Mot. Dismiss Ex. A at 8, describes the fees charged by BCBSM between January 1, 2006 and December 31, 2006. Of particular relevance here, the Value of Blue pie chart indicates that BCBSM charged a $174,188 Access Fee. BCBSM claims that the "Access Fee" is equivalent to the disputed fees at issue here, and therefore Alma Products had notice in June 2007, the date the Value of Blue pie chart was disclosed. Accordingly, BCBSM claims the statute of limitations began to run in June 2007, and Alma Products' ERISA claims are time-barred.

## ii

Four judges in this district have addressed this argument, and each judge has issued opinions with different—though not incompatible—rulings. First, after a bench trial in *Hi-Lex*, Judge Roberts concluded that the Value of Blue chart provided sufficient notice of the disputed

fees in 2007: "With the exercise of due diligence, plaintiffs should have been on sufficient notice of the disputed fees in 2007, through the Value of Blue Chart."  Fact Findings p.40 L. Importantly, however, the district court conclusion was based not just on the disclosure of the Value of Blue Chart in June 2007, but also the fact that BCSBM representatives met with the plaintiff and discussed the meaning of the data in the Value of Blue Chart.  Fact Findings p. 41 at ¶ 164 (the BCBSM representative "presented each and every page of the renewal packets to [plaintiff] and testified that she walked him through each 'slice' of the Value of Blue pie charts" in August 2007).  Accordingly, Judge Roberts found that it was the Value of Blue pie chart *together with* the explanatory meeting with BCBSM representatives that put the *Hi-Lex* plaintiff on notice that BCBSM was charging the disputed fees.

Following Judge Robert's precedent, Judge Steeh concluded that there was a material issue of fact regarding whether BCBSM had provided sufficient notice of the disputed fees to the plaintiff.  To begin, Judge Steeh concluded that the Value of Blue pie chart alone was not sufficient to put the plaintiff on notice of the disputed fees: "This court cannot find at this pleadings stage that the mere receipt of the pie charts put plaintiffs on notice of the disputed fees."  *Kent Companies*, at *10.  However, this conclusion did not end the inquiry.  For Judge Steeh, the dispositive issue was whether BCBSM conducted a meeting with the plaintiff to explain the content of the Value of Blue pie chart "slice by slice"—as BCBSM did in *Hi-Lex*. As explained in its opinion, "[A] question of fact exists as to whether the "Value of Blue" report [gave plaintiffs notice of the fees].  This, in turn, depends on which documents BCBSM produced to plaintiffs after providing the pie chart, whether or how BCBSM explained the chart, and how [plaintiffs'] representatives understood the disclosures made in that document."  *Kent*

*Companies*, at \*11.  Until the parties had developed a record addressing these factual issues, BCBSM's statute of limitations argument was premature.  *Id*.

In contrast, Judge Murphy determined that the language of the 2006 Schedule A (which included the Value of Blue pie chart) was irrelevant to the question of whether the statute of limitations had run.  Relying on the Sixth Circuit's opinion in *Hi-Lex*, Judge Murphy concluded that the relevant conduct was "BCBSM's actual charging of the disputed fees and subsequent alleged cover-up."  *Pridgeon*, at \*8.  Judge Murphy described the language in the 2006 Schedule A as "ambiguous," and explained that seven subsequent years of misleading reports would dissipate any notice that had been provided by that ambiguous language: "BCBSM cannot cite ambiguous forward-looking language from the Schedule A, subsequently conceal the extent of administrative fees charged in the settlement and reporting documents it later provided to [plaintiffs], and then rely on the Schedule A language to argue that [plaintiffs] knew or should have known have known about the disputed fees."  *Pridgeon* at \*6.  Therefore, the fact that BCBSM had continued to provide misleading documents to plaintiffs for seven years merited the conclusion that the 2006 Value of Blue pie chart did not provide sufficient notice.[1]

Judge Lawson also concluded that the fact that the Value of Blue pie chart was presented in 2006 was not dispositive, albeit for a different rationale.  In *Dykema*, Judge Lawson concluded that the statute of limitations was tolled in full while a class action against BCBSM was pending from September 1, 2004 to August 12, 2011.  Therefore, even if the 2006 Value of Blue pie chart did in fact reveal that BCBSM was charging the hidden fees, the statute of limitations was tolled until 2011.  And because the plaintiff in *Dykema* had filed its lawsuit just a couple years after the

---

[1] Judge Steeh's opinion also contrasted the factual scenario in *Kent Companies* from the one presented to Judge Murphy in *Pridgeon*.  In *Kent Companies*, the parties' contractual relationship ended in 2008, the same year that BCBSM provided the Value of Blue pie chart.  "Thus, unlike *Pridgeon & Clay*, this case did not involve seven years worth of false reports following the alleged disclosures, but rather the false reports were produced at the same time as the hidden fees were allegedly disclosed." *Kent Companies*, at \*9.

tolling ended, the case was timely.   Accordingly, Judge Lawson did not need to evaluate BCBSM's factual allegation that the 2006 Value of Blue statement revealed the hidden fees. *Dykema* at 16 ("With this conclusion, it is unnecessary to address the arguments dealing with the plaintiff's actual knowledge of the hidden fees before June 1, 2006 as a result of language in the Schedule A document they executed (the *Hi-Lex* footnote 10 argument) and whether the "Value of Blue" report that Blue Cross furnished provided notice sometime in 2007").

### iii

Here, the current situation is analogous to the one in *Kent Companies*: there is a material issue of fact regarding whether the 2006 Value of Blue pie chart put Alma Products on notice of the hidden fees.[2]   Unlike in *Hi-Lex*, it is unclear whether BCBSM representatives ever met with Alma Products to discuss the meaning of the pie chart and its terms.   Until there is greater factual development concerning what additional information BCBSM provided and how Alma Products understood the Value of Blue pie chart, it would be premature to determine whether Alma Products' claims are barred by the statute of limitations.

### B

In addition to its statute of limitations argument, BCBSM briefly advances three other grounds in support of dismissal.   First, BCBSM contends that Alma Products is estopped from suing to recover the disputed fees.   As part of the annual settlements, BCBSM issued Alma Products a "Value of Blue" report that allegedly quantified the disputed fees that BCBSM had collected during the preceding year.   BCBSM now claims that, by paying the fees as listed in the "Value of Blue" report, Alma Products has waived its right to recover those fees.   But in the

---

[2] This case is distinguishable from *Pridgeon* because it is unclear how long Alma Products' relationship with BCBSM lasted after the 2006 Value of Blue pie chart was disclosed and whether BCBSM continued to produce misleading documents.  In addition, despite the well-reasoned opinion in *Dykema*, this Court respectfully declines to hold that the *Pipefitters* class action tolled the statute of limitations absent Sixth Circuit precedent mandating that conclusion.

Sixth Circuit, parties cannot contract around ERISA, and estoppel arguments are unavailing. *West v. AK Steel Corp.*, 484 F.3d 395, 408 (6th Cir. 2007).

## C

BCSM also contends that the complaint fails to state a plausible claim as to the alleged PGIP fees. This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

BCBSM believes that the amended complaint is deficient because the plaintiffs assert only that BCBSM "has not otherwise explained how it used" the funds; and it does not offer any specific facts to show that those funds were used other than for the benefit of the plan, in keeping with BCBSM's fiduciary duty. Alma Products responds that the claims based on the PGIP fees are substantiated by more than three pages of specific allegations in the complaint, and that the discovery they have received has confirmed that BCBSM did not, as they allege, properly disclose the fees to them, but instead "buried them" within the amounts reported as "professional

claims" or "claims paid."  The complaint contains no allegations as to the precise purpose to which the PGIP fees were put by the defendant, but it contains sufficient facts to identify the specific nature of the fees withheld and the provisions of the plan or BCBSM's policies regarding administration of the plan to identify the fees at issue.  As to the substance of the alleged breach of fiduciary duty and self-dealing, the complaint alleges that BCBSM accounted for the fees with Alma Products in the same way it did in *Hi-Lex*, with the only difference being that the PGIP fees involved overstated payments to doctors rather than to other health care providers such as hospitals, and that the putative premise for the overstated payment amounts was BCBSM's policy of providing "physician incentives" rather than "network access" or "retiree surcharges," or "contingency and risk fees."  Other than as to the denomination of the PGIP fees and the specific providers to whom BCBSM allegedly paid less than it reported to the plaintiffs, it is evident that the claims related to PGIP fees are identical in all material respects to the claims for "Hidden Fees" for which the defendant already has been held liable, and the complaint therefore states valid claims for relief under ERISA as to the PGIP Fees.

## D

Lastly, BCBSM claims that Alma Products state-law claims are preempted by ERISA and should be dismissed.  Alma Products' Complaint asserts a number of state law claims, including: (1) violation of the Michigan Nonprofit Health Care Corporation Reform Act, Mich. Comp. Laws § 550.1101 (Count III); (2) violation of the Michigan Health Care False Claims Act, Mich. Comp. Laws § 752.1009 (Count IV); breach of contract and breach of covenant of good faith and fair dealing (Count V); breach of common law fiduciary duty (Count VI); conversion (Count VII); and fraud (Counts VIII and IX).

Alma Products appears to have abandoned these claims because it does not address or mention the claims in its response.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," and "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (quotations and alterations omitted).

Moreover, as every court in this district to address the issue has found, these state-law claims "arise out of the same operative facts as the ERISA claims," and "seek relief for the same conduct through 'alternative enforcement mechanisms.'"  *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 2012 WL 3887438, at *10 (E.D. Mich. Sept. 7, 2012).  All of the state-law claims (Counts III – IX) are therefore preempted by ERISA and must be dismissed.  *Girl Scouts of Middle Tennessee, Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 419 (6th Cir. 2014) (citations omitted).

### III

Having survived BCBSM's motion to dismiss, Alma Products filed a motion for partial summary judgment. Alma Products asserts that it is entitled to summary judgment on its claim for breach of fiduciary duty as to the disputed fees based on the controlling decision in *Hi-Lex*. In *Hi-Lex*, BCBSM was held liable for the same type of fees under factually indistinguishable circumstances.  Alma Products also contends that it is entitled to summary judgment on their claim for self-dealing as to those same fees because the Sixth Circuit found BCBSM liable under the same circumstances on the same claim in *Hi-Lex*.  As noted above, there is an issue of fact concerning whether Alma Products' claims are timely.  Therefore, Alma Products' motion for partial summary judgment will be denied.

- 11 -

## IV

Accordingly, it is **ORDERED** that Defendant Blue Cross and Blue Shield of Michigan's Motion to Dismiss (ECF No. 12) is **GRANTED IN PART AND DENIED IN PART**.  Counts III through IX of the Complaint are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Alma Products' Motion for Partial Summary Judgment (ECF No. 15) is **DENIED.**

<div style="margin-left:auto;">

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

</div>

Dated: March 31, 2015

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2015.

s/Suzanne M. Gammon
SUZANNE M. GAMMON

---